## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **LUIS ILLARAZA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **HOVENSA, L.L.C., ANTHONY CRANE** | ) | **Civil Action No. 2008-0059** |
| **INTERNATIONAL, L.P., UNITED STEEL** | ) | |
| **WORKERS LOCAL UNION 8248, and** | ) | |
| **UNITED STEEL WORKERS OF AMERICA,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **JOSE M. ILLARAZA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2007-0125** |
| | ) | |
| **ANTHONY CRANE INTERNATIONAL, L.P.,** | ) | |
| **and HOVENSA L.L.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Eszart A. Wynter, Esq.,**
St. Croix, U.S.V.I.
> *For the Plaintiffs*

**David J. Cattie, Esq.,**
**Charles E. Engeman, Esq.,**
St. Thomas, U.S.V.I.
> *For the Defendant Anthony Crane International, L.P.*

**Stephanie L. Adler, Esq.,**
Orlando, Florida
> *For the Defendant Hovensa L.L.C.*

**Michael J. Stanford, Esq.,**
St. Croix, U.S.V.I.
> *For the Defendants United Steelworkers*
> *Local Union 8248 and United*
> *Steelworkers of America*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on an appeal, filed by Plaintiffs Luis Illaraza and Jose Illaraza, of a May 4, 2011 Order entered by the Magistrate Judge of this Court disqualifying Plaintiffs' counsel, Lee J. Rohn, Esq., and her firm, from representing either or both Plaintiffs in these consolidated cases on the grounds of an impermissible conflict of interest under ABA Model Rule of Professional Conduct 1.9.[1]  Defendant Anthony Crane International, L.P. ("ACI") opposes Plaintiffs' appeal.  The Court heard oral argument on February 1, 2012.

For the reasons that follow, the Court finds that: (1) the Magistrate Judge did not clearly err when he found that Plaintiffs' interests were materially adverse to the interests of a former client Attorney Rohn had represented in substantially related litigation; (2) the Magistrate Judge's disqualification order was not "unjust"; and (3) the Magistrate Judge's implicit finding that ACI did not waive its right to move for disqualification was neither clearly erroneous nor contrary to law. Accordingly, the disqualification of Attorney Rohn and her firm from

---

[1] Throughout this Memorandum Opinion, when the Court refers to Plaintiff, it will be referring to Luis Illaraza, and the docket numbers cited herein are from his case, *Illaraza v. Hovensa, et al.*, Civ. No. 2008-59. The Court does so for ease of reference, although the rulings in this Memorandum Opinion apply to both Plaintiffs—Jose Illaraza and Luis Illaraza—in these consolidated cases. While Attorney Rohn represented Luis Illaraza, she also entered an appearance on behalf of Jose Illaraza (who is represented by Attorney Eszart A. Wynter); Defendant ACI moved for disqualification of Attorney Rohn in both Luis and Jose Illaraza's cases; the Magistrate Judge's Order Granting Motion to Disqualify disqualified Attorney Rohn from representing either or both Illarazas; and both Illarazas appealed the disqualification Order.

representation of Plaintiffs in this matter was appropriate.  The Court therefore denies Plaintiff's appeal and affirms the Magistrate Judge's May 4, 2011 Order Granting Motion to Disqualify.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are licensed crane and heavy equipment operators who were employed by ACI at the Hovensa refinery on St. Croix, United States Virgin Islands.  According to deposition testimony and written reports detailing the incident at the center of this case, the Hovensa security office received an anonymous tip on August 10, 2006, that an air conditioner would be stolen from Hovensa the next day.  (Dkt. No. 264-23).  On August 11, 2006, Hovensa security personnel, including its Manager, Jay Galindo, stopped an ACI truck outside of the refinery grounds.  ACI's Rigging Superintendent, Nelvin Noelien, was driving the truck in which Luis Illaraza was a passenger.  (Dkt. No. 264-40 at 2).  In his report detailing his conversation with Noelien, Galindo stated that Noelien admitted to him that he stole the air conditioner; that he was taking it to his house; and that "Jose Illaraza and Luis Illaraza knew about the theft and had assisted him with getting the air conditioner out of the refinery."  *Id.*  The police arrested Noelien and the Illaraza brothers, and charged them with grand larceny.  Following the arrest, Hovensa deactivated the badges of the three men, which rendered them unable to enter the refinery.  On July 27, 2007, the government dismissed the charges against Plaintiffs without prejudice.  (Dkt. No. 265-7). Noelien pleaded guilty to possession of stolen property and served one year of probation.  (Dkt. No. 265-19).

### A.  The Defamation Cause of Action

Jose Illaraza and Luis Illaraza filed separate complaints in 2007 and 2008, respectively, alleging, *inter alia*, wrongful discharge, defamation, malicious prosecution, and intentional or negligent infliction of emotional distress. The two cases were consolidated on December 3, 2008.

3

(Dkt. No. 25).  In August 2009, Luis Illaraza was asked during discovery to identify any defamatory statement made by or on behalf of ACI.  He responded: "I have never heard or seen any statement or writing on behalf of the Defendant that wa[s] slanderous or defaming[ ]" and "I can not identify any [defamatory] statement."  (Dkt. No. 219, Exhs. 10, 11).  Then, in his First Amended Complaint, filed in July 2010, Luis Illaraza named certain ACI employees who allegedly had told other employees that the Illarazas were terminated because they were stealing.  He did not claim that Noelien was among the employees who made those allegedly defamatory statements.  (Dkt. No. 327).

ACI moved for summary judgment against Luis Illaraza in December 2010.  ACI argued, *inter alia*, that none of the alleged ACI defamers were managerial level employees and therefore ACI should be awarded summary judgment on the defamation claim.  In February 2011, Luis Illaraza filed his opposition to ACI's motion for summary judgment.[2]  In his response to ACI's Statement of Undisputed Facts, Luis Illaraza attributed a number of defamatory comments about Plaintiff to Hovensa and ACI employees.  Particularly relevant to this disqualification motion are certain statements attributing allegedly defamatory comments to Noelien, who ACI had admitted was a management-level employee.  *See, e.g.,* Dkt. No. 262 at 25, 32, 40.[3]  Luis Illaraza argued in his brief that the false statements by ACI management personnel, including those by Noelien, raised a genuine issue of material fact regarding whether ACI defamed Plaintiff, thus precluding summary judgment.  (Dkt. No. 263 at 26).

---

[2] On March 28, 2011, Luis Illaraza filed an Amended Opposition to ACI's motion for summary judgment pursuant to the Court's Order because his initial filing exceeded the page limit without leave of court.

[3] Plaintiffs contended that ACI was liable for defamation, in part, because of the defamatory statements uttered by its management-level employees.

**B.  ACI's Motion to Disqualify**

On March 11, 2011, less than two weeks after Luis Illaraza filed his opposition to ACI's motion for summary judgment, ACI moved to disqualify Plaintiff's attorney, Lee J. Rohn, Esq., and her firm, based on an impermissible conflict of interest pursuant to ABA Model Rule of Professional Conduct ("MRPC") 1.9.  (Dkt. No. 280).  MRPC 1.9 provides that an attorney shall not represent a current client whose interests are materially adverse to the interests of a former client in a substantially related matter, unless the former client gives consent in writing.  ACI attached an Order Appointing Counsel, showing that Attorney Rohn had been appointed on August 18, 2006, to defend Noelien on the grand larceny charge arising from the theft of the air conditioner.  (Dkt. No. 280-2).  ACI also submitted an affidavit by Noelien, in which he stated that during the course of Attorney Rohn's representation of him, he had "confidential discussions with her office related to that representation."  (Dkt. No. 280-3, ¶ 3).  He continued, "I have never waived those confidential privileges between myself and my former attorneys."  *Id*. Noelien went on to say that he understood that, in a recent court filing, "Attorney Rohn has accused me of stating to HOVENSA security, during its investigation, that Jose Illaraza and Luis Illaraza were involved in the alleged theft. I have never made any such accusations against either Jose Illaraza or Luis Illaraza."  (Dkt. No. 280-3, ¶ 5).  Noelien asserted that he did "not consent to being examined or cross-examined by my former attorney or her firm regarding any of the facts or circumstances involving my case, including any statements allegedly made by me to anyone during the course of the investigation of the theft."  (Dkt. No. 280-3, ¶ 7).  Nor did he consent to Attorney Rohn's or her firm's "continued representation of the Illarazas in their cases."  (Dkt. No. 280-3, ¶ 8).  ACI contended that, based on these facts, Attorney Rohn and her

firm should be disqualified from representing either Plaintiff as such representation violated MPRC 1.9.

On March 29, 2011, Plaintiff opposed ACI's disqualification motion on two main grounds: (1) Noelien's interests were actually aligned with those of Plaintiff, rather than materially adverse; and (2) ACI unnecessarily delayed bringing its motion, which suggested an improper motive to gain a litigation advantage. (Dkt. No. 300). As to the first ground, Plaintiff asserted that he had "*always* contended that Noelien never stole anything, never admitted to stealing anything, and never implicated Plaintiffs in any theft." (Dkt. No. 300 at 3). Plaintiff explained that *Galindo* provided "false information" and "told the police that, on the day of the arrest, Noelien orally admitted to stealing the air conditioner and implicated Plaintiffs in the theft." (Dkt. No. 300 at 3). Plaintiff also argued that ACI's delay in bringing the motion raised suspicions about its real motivation in doing so, because ACI had known about Noelien's involvement in the case, including his alleged oral admission to Galindo, since 2006. (Dkt. No. 300 at 9-10).

In its reply brief, ACI challenged Plaintiff's allegation that he had *always* contended that Noelien never implicated him in any theft by citing the following seven illustrative statements to the contrary culled from Plaintiff's Amended Opposition to ACI's Motion for Summary Judgment (Dkt. No. 292) and Response to ACI's Statement of Undisputed Facts and Counter Statement of Facts (Dkt. No. 262):

1. ACI knew that its employees, *including management personnel, Nelvin Noelien, [. . .] were making defamatory statements about Plaintiff for over one year*, up through Noelien's trial and never once did ACI tell its employees to stop spreading defamatory statements. (Document 292 (Amended Opposition to Summary Judgment) at 10) [(emphasis added)].

2. Thus, all of the statements that Plaintiff was involved in stealing an air conditioner from the refinery made by ACI's management employees,

including Nelvin Noelien, [. . .] constitute unlawful publications to third parties.  (*Id.* at 15).

3. ACI's statements were defamatory of Plaintiff, including the statement to [sic] Galindo claims *was made to him by Noelien that Plaintiff was involved in the theft, because they were knowingly false*.  (*Id.* at 16) (emphasis added).

4. *There is evidence that ACI's own Superintendent, Noelien, falsely told HOVENSA that Plaintiff was involved in theft of an a/c thereby implicating Plaintiff in grand larceny, leading to his arrest, jail time, loss of his job, and altogether ruining his life and reputation.*  (*Id.* at 19) (emphasis added).

5. ACI was not protecting any legitimate interest when its employees and managers were falsely telling others at the refinery and in the community that Plaintiff was a thief *or when Noelien was falsely telling HOVENSA Security that Plaintiff was involved in theft.*  (*Id.* at 20) (emphasis added).

6. Admit but Plaintiff further contends that according to HOVENSA, *it was ACI's Rigging Superintendent, Nelvin Noelien, who falsely claimed to Galindo that Plaintiff was involved in the theft,* thereby effectuating Plaintiff's arrest and incarceration. . . .  *This statement clearly constitutes defamation per se.*  (Document 262 (Counterstatement of Facts in Opposition to Summary Judgment) at 25) [(emphasis added)].

7. Many of the defamers, including [ ] Noelien, [ ] were ACI management personnel.[ ] Moreover, Galindo testified that Noelien told him that the Illarazas were involved in the theft when they were not, thus this was clearly a defamatory statement with dire consequences for the Plaintiff and Jose Illaraza.  (*Id.* at 40).

(Dkt. No. 301 at 3-4).  ACI maintained that while Plaintiff would at times couch the accusations as Hovensa accusations, these cited assertions establish that Plaintiff was in fact claiming that *Noelien*, Attorney Rohn's former client, made the allegedly defamatory statements.

ACI also challenged Plaintiff's argument that it had improperly brought its disqualification motion at the eleventh hour.  It pointed out that Plaintiff's early identification of Noelien as a person with information about the case was not grounds for disqualification because Plaintiff had not alleged that Noelien was a defamer until Luis Illaraza filed his opposition to

ACI's motion for summary judgment several years later.  ACI claimed that only at this later time did the conflict exist, and it filed the motion for disqualification shortly thereafter.

### C.  The Magistrate Judge's Order

On May 4, 2011, the Magistrate Judge granted ACI's motion to disqualify.  He found that it could not be disputed that Attorney Rohn had represented Noelien in the criminal matter resulting from the alleged theft of the air conditioner—"the same alleged theft that is at the crux of the claims asserted in the above-captioned matters"—that the matters were substantially related, and that Noelien had not consented to Attorney Rohn's current representation of Plaintiff.  (Dkt. No. 314 at 4-5).

According to the Magistrate Judge, the only open question was whether the interests of Plaintiff were materially adverse to the interests of Noelien. He noted that the record was "replete with factual allegations" by Plaintiff that identified Noelien as making defamatory or other statements implicating Plaintiff in the alleged theft.  In this regard, the Magistrate Judge cited the specific pages of ACI's reply brief which listed the seven examples attributing defamatory statements to Noelien.  Because Noelien denied implicating the Illarazas, the Magistrate Judge concluded that Plaintiff's interests were materially adverse to Noelien's interests, that a conflict of interest existed, and that the "appropriate remedy" was to disqualify Attorney Rohn and her firm from continuing to represent "either Luis Illaraza or Jose M. Illaraza or both in the above-captioned matters."  (Dkt. No. 314 at 5, 6).  Plaintiff, through Attorney Rohn, timely filed a "Notice of Objection to and Appeal of Magistrate Judge's Order Disqualifying Counsel" (Dkt. No. 320), which ACI opposed.  (Dkt. No. 324).

8

## II. DISCUSSION

### A. Standard of Review

"A motion to disqualify counsel is a non-dispositive matter that is reviewed under a 'clearly erroneous or contrary to law' standard." *VECC, Inc. v. Bank of Nova Scotia*, 222 F. Supp. 2d 717, 719 (D.V.I. 2002) (citation omitted); *see also* Fed. R. Civ. P. 72(a) (providing that on appeal from a ruling of a magistrate judge on a pretrial non-dispositive matter, a district court shall "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law."). The Supreme Court has held that a finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "This means that '[i]t is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *Behrend v. Comcast Corp.*, 655 F.3d 182, 189 (3d Cir. 2011) (citation omitted). "[T]he phrase 'contrary to law' indicates plenary review as to matters of law." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). "[A] Magistrate Judge's ruling is contrary to law if 'the Magistrate Judge misinterpreted or misapplied the applicable law.'" *Kendricks v. Hertz Corp.*, 2008 WL 3914135, at *2 (D.V.I. Aug. 18, 2008) (citation omitted). "The party who filed the appeal bears the burden of establishing that the magistrate judge's decision is clearly erroneous or contrary to law." *Control Screening, LLC v. Integrated Trade Sys., Inc.*, 2011 WL 3417147, at *6 (D.N.J. Aug. 3, 2011).

**B.  Disqualification Motions – General Standards**

A district court's "power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it."  *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).  In the Third Circuit, "the exercise of this authority is committed to the sound discretion of the district court and will be overturned on appeal only for an abuse of this discretion." *Id.* "[D]isqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, [but] disqualification never is automatic."  *Id.*  A court should disqualify an attorney "only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule."  *Id.*

The Third Circuit "has often employed a balancing test in determining the appropriateness of the disqualification of an attorney."  *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984).  In *Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n*, 909 F. Supp. 287 (E.D. Pa. 1995), the court set forth the factors to be balanced: "(i) [the former client's] interest in attorney loyalty, (ii) [the current client's] interest in retaining [his] chosen counsel, (iii) the risk of prejudice to [the current client], and (iv) the court's interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system."  *Id.* at 293 (citing *Corn Derivatives*, 748 F.2d at 162); *see also Brice v. Hess Oil V.I. Corp.*, 769 F. Supp. 193, 195 (D.V.I. 1990) (including as a factor "the policy that attorneys be free to practice without excessive restrictions.").  Although "'doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet 'a high standard of proof' before a lawyer is disqualified.'"  *Prosser v. Nat'l Rural Utils. Coop. Fin. Corp.*, 2009 WL 1605637, at *2 (D.V.I. June 8, 2009) (citations omitted).

## C.  Analytical Framework: Model Rule 1.9

"In the Virgin Islands, the Model Rules of Professional Conduct govern the professional responsibilities of practicing attorneys."  *VECC, Inc.*, 222 F. Supp. 2d at 719 (citing Local Rule of Civil Procedure 83.2(a) and *Brice*, 769 F. Supp. at 194).

MRPC 1.9 addresses whether an attorney may represent a current client whose interests are adverse to the interests of a former client.  The relevant section of Rule 1.9, entitled "Duties To Former Clients," provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MRPC 1.9(a).  Under this Rule, disqualification "is required if (1) the former representation is the same or substantially related to the present matter, (2) the interests of counsel's current client are materially adverse to the interests of the former client, and (3) the former client has not consented."  *Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 672 (E.D. Pa. 2004) (analyzing Pennsylvania Rule of Professional Conduct 1.9(a), which tracks the Model Rule).[4]  The Third Circuit has emphasized that Rule 1.9 is a

> prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys.  . . .  [T]he rule is important for the maintenance of public confidence in the integrity of the bar.

*Corn Derivatives,* 748 F.2d at 162.

---

[4] The parties did not dispute before the Magistrate Judge, nor do they dispute on appeal, that Noelien is a former client of Attorney Rohn's, and that the two matters—Noelien's criminal case and the Illarazas' civil cases—are substantially related.  The issue before this Court is whether the Magistrate Judge clearly erred when he found that Noelien's interests were materially adverse to Plaintiffs' interests.

**D.  Analysis**

Plaintiff raises three issues on appeal: (1) whether the Magistrate Judge's finding that Plaintiff's interests in this case are materially adverse to the interests of his counsel's former client, Nelvin Noelien, is clearly erroneous; (2) whether the disqualification of counsel is an injustice because it deprives Plaintiff of his preferred counsel and limits counsel's ability to practice; and (3) whether the Magistrate Judge's conclusion that ACI has not waived its right to move for disqualification is clearly erroneous or contrary to law.  (Dkt. No. 320 at 9).

**1.  Whether the Magistrate Judge's Finding that Noelien's Interests Are Materially Adverse to Plaintiffs' Interests Is Clearly Erroneous**

**a.  The Magistrate Judge's Finding**

The Magistrate Judge determined that the record is "replete with factual allegations by Plaintiffs identifying Nelvin Noelien as making defamatory statements or other statements implicating Plaintiffs in the alleged theft that underlies this litigation."  (Dkt. No. 314 at 5).  He referred specifically to the pages of ACI's reply brief that quoted seven statements from Luis Illaraza's opposition to ACI's motion for summary judgment. Based on the text of these statements, the Magistrate Judge determined that Plaintiff accused *Noelien* of defaming the Illarazas by implicating them in a crime, and therefore concluded that Plaintiff's interests were materially adverse to Noelien's and created a conflict of interest for Attorney Rohn.

A review of the seven excerpts from Luis Illaraza's opposition, set forth in Section I(B) above, leads to the conclusion that the Magistrate Judge's finding that Noelien's interests are materially adverse to Plaintiff's interests is not clearly erroneous.  Indeed, the statements clearly convey that Plaintiff is either directly or indirectly accusing Noelien of having defamed him by implicating him in a crime—an accusation that Noelien unequivocally denies. Thus, a clear conflict exists between the respective positions of Attorney Rohn's former and current clients.

12

Direct accusations of Noelien by the Plaintiff are apparent in several statements. In one excerpt, Plaintiff accuses ACI employees, including Noelien, of "making defamatory statements about Plaintiff for over one year," and goes on to chastise ACI for having done nothing about it. Another excerpt refers to the "unlawful publications" of defamatory statements made by ACI management employees, including Noelien; another accuses Noelien of "falsely telling HOVENSA Security that Plaintiff was involved in theft"; and yet another refers to Noelien as a "defamer." The plain language of these statements leaves little room, if any, for the suggestion that Plaintiff was not accusing Noelien of having defamed him.

Plaintiff's indirect accusations also support the conclusion that the Magistrate Judge's finding is not clearly erroneous. Although several excerpts refer to Noelien's statements as having been reported by Hovensa or by Hovensa's employee, Galindo, it is, nonetheless, *Plaintiff* who characterizes Noelien's statements as "false," "knowingly false," or "defamation per se." Moreover, it is a fair conclusion to draw that Plaintiff has, in effect, adopted these accusations against Noelien by not only characterizing them as defamatory, but also by using the statements allegedly made by Noelien to Galindo as support for Plaintiff's contention that there is a genuine issue of material fact as to the existence of defamatory statements made by, or on behalf of, ACI that precludes summary judgment in favor of ACI on Plaintiff's defamation claim.

As noted above, the clearly erroneous standard—which governs this Court's review of the Magistrate Judge's ruling—requires a court to '"accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *Behrend*, 655 F.3d at 189 (citation omitted). The Magistrate Judge's

conclusion that Plaintiff's and Noelien's interests are materially adverse, which was based on the text of the seven excerpts, is not "completely devoid of minimum evidentiary support," and bears a "rational relationship to the supportive evidentiary data." *Id.* Accordingly, it is not clearly erroneous.

### b. Plaintiff's Challenge to the Magistrate Judge's Finding

In attempting to demonstrate that the Magistrate Judge erred in his conclusion that the interests of Attorney Rohn's current and former clients are materially adverse, Plaintiff makes several arguments, none of which the Court finds persuasive. If anything, Plaintiff's arguments confirm the absence of error in the Magistrate Judge's ruling.

First, Plaintiff urges the Court to read the excerpts upon which the Magistrate Judge relied in context—that is, in the context of the hundreds of pages of summary judgment filings made by the parties. Plaintiff argues that his position all along has been that Noelien never stole anything and never implicated him in the theft; therefore, the interests of the parties are not materially adverse. Plaintiff maintains that by phrasing the excerpts as "according to Hovensa" or "Galindo claims," Plaintiff was directing the Court's attention to the fact that it was *Hovensa's* position—not his—that Noelien made the defamatory statement. According to Plaintiff, when the excerpts are read in context, it is apparent that Plaintiffs have consistently contended that *Galindo*, not *Noelien,* made the defamatory statement by falsely attributing the defamatory statement to Noelien. (*See* Dkt. No. 320 at 12).

Notwithstanding Plaintiff's contention, the conclusion is inescapable that the excerpts upon which the Magistrate Judge relied do not say or imply what Plaintiff suggests that the contextual reading allegedly communicates. At oral argument, the Court asked Plaintiff's counsel to point out where, in the first of the seven excerpts, Plaintiff declared that *Galindo*

(rather than Noelien) made the false and defamatory statement.  Counsel acknowledged that the first excerpt, as well as others about which the Court inquired, did not so state, but emphasized that when the excerpts are read in the context of all the filings, it would be clear that the Magistrate Judge had erred.

The Court declines to accept Plaintiff's invitation to read into his verbatim statements words that are not there, but should be understood as being there based on a reference to "context."  Indeed, Plaintiff's apparent need to resort to a purported "contextual reading" in order to alter the plain meaning of verbatim statements that clearly convey a direct or indirect accusation of Noelien by Plaintiff confirms that the Magistrate Judge's factual findings are not clearly erroneous.

Equally compelling in this regard is Plaintiff's perceived need, as reflected in his brief on appeal, to amend his opposition to ACI's motion for summary judgment to make his position "perfectly clear." (Dkt. No. 320 at 12). Plaintiff's protestations notwithstanding, the fact remains that none of the examples cited by the Magistrate Judge can be read as attributing the allegedly false and defamatory statement to Galindo. In every excerpt, Noelien is the source of the statement—whether it is via a direct attribution by Plaintiff or indirectly by use of phrases such as "according to Hovensa" or "Galindo claims." And, in each instance, Plaintiff has embraced the accusation, either directly and/or indirectly by adopting it for his own use, in an attempt to defeat summary judgment. In short, the Court rejects Plaintiff's attempt to recharacterize his defamation theory, and the facts upon which that theory is based, in order to avoid the conclusion that his interests and those of Noelien are materially adverse.

Having taken the position, in Plaintiff's opposition to ACI's summary judgment motion, that Noelien made the defamatory statement, Attorney Rohn, as Plaintiff's counsel, would have

to cross-examine Noelien at trial in an attempt to impeach him for purposes of establishing the defamation claim against ACI. The Third Circuit has observed that "[c]onflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991) (citation omitted). In *Selby v. Revlon Consumer Prods. Corp*., 6 F. Supp. 2d 577 (N.D. Tex. 1997), the court explained the conflict further:

> [E]xamining one's own client as an adverse witness on behalf of another client, or conducting third party discovery of one client on behalf of another client, is likely (1) to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness . . . [which is] likely to present a direct adverseness of interest.

*Id.* at 581 (quoting ABA Comm. on Ethics & Professional Responsibility, Formal Op. 92-367 (1992), *reprinted in* ABA/BNA Lawyers' Manual on Professional Conduct at 1001:151 (1993)). This conflict arises because "a zealous advocate must necessarily challenge the credibility of an adverse witness," notwithstanding that a former client "has a right to expect that [his] credibility and integrity will not be impugned by [his] former attorney in a substantially related matter." *Id.* at 581, 582.

To avoid this obvious conflict, and in an attempt to support Plaintiff's position that his interests are aligned with those of Noelien, Plaintiff submitted an affidavit in which he confirmed that he is not accusing Noelien of defaming him. (Dkt. No. 320-2, ¶ 6). In his brief on appeal, Plaintiff hypothesized that, if Noelien understood that Plaintiff was not accusing him of defamation and would never sue him for defamation, Noelien would have no problem with Attorney Rohn, his former counsel, representing Plaintiff in this case. Plaintiff also posited that, in that context, Noelien would consent to Attorney Rohn examining him at trial but, since it was anticipated that ACI would call Noelien to testify, Attorney Rohn would "have no need to

16

question him at all." (Dkt. No. 320 at 18). In essence, Plaintiff appears to be waiving his right to cross-examine Noelien to confirm the accusations made by Plaintiff, in his opposition to ACI's motion for summary judgment, that are supportive of his defamation claim against ACI. However, this further argument by Plaintiff does not alter the Court's conclusion that the Magistrate Judge's decision was not clearly erroneous, nor does it allay the Court's concerns regarding the conflict that representation by Attorney Rohn presents.

Plaintiff's confirmation by affidavit that his position is aligned with Noelien's does not erase the direct and indirect accusations made by Plaintiff in his opposition to ACI's motion for summary judgment, nor does it negate the benefit that Plaintiff receives from using the accusations to aid his cause in avoiding the entry of summary judgment against him on his defamation claim against ACI. Instead, by purportedly confirming his position that he is not accusing Noelien of defamatory conduct, Plaintiff seeks to garner support for the untenable proposition that he should be allowed to "'gain an advantage [avoid summary judgment] by litigation on one theory [Noelien made defamatory statements], and then seek an inconsistent advantage [avoid disqualification of his counsel] by pursuing an incompatible theory [Noelien did not make defamatory statements; Galindo did].'" *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (citation omitted).[5] Far from demonstrating clear error in the Magistrate Judge's ruling, the Court cannot, and will not, sanction such an unwholesome end run around the Model Rules of Professional Conduct.

---

[5] The Court is not opining on Plaintiff's ability to advance different theories in this litigation by arguing in the alternative, for example, that either Noelien or Galindo or both made defamatory statements. Rather, the issue here is Attorney Rohn's ability, in such a context, to represent Plaintiff consistent with the Model Rules of Professional Conduct.

Moreover, in seeking to escape the clutches of one Model Rule—conflict of interest—Plaintiff appears to run afoul of yet another—reasonable diligence.  Model Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."[6]  In this regard, an attorney

> owes his current litigation client a duty of zealous advocacy. [The attorney] cannot fulfill this duty if he has already committed himself to a particular view of [his former client's] role in the underlying case.  Indeed, an attorney 'should not put himself in a position where, even unconsciously, he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another.'

*Selby*, 6 F. Supp. 2d at 581 n.5 (quoting ABA Comm. on Ethics & Professional Responsibility, Formal Op. 92-367 (1992)).  Here, counsel's attempt to avoid disqualification by effectively placing her former client "off limits" to cross-examination on a point that Plaintiff is advocating in order to avoid summary judgment, raises precisely the concern expressed in *Selby*. By committing to "a particular view of [Noelien's] role in the underlying case"—namely, that Noelien did not make defamatory statements—and waiving cross-examination on that point, Attorney Rohn places in jeopardy her ability to fulfill the duty of reasonable diligence owed to her current client who claims to have been defamed by Noelien's former employer, ACI.[7]  This

---

[6] Comment 1 to Rule 1.3 echoes the zealous advocacy language found in previous iterations of the Model Rules.  It provides, *inter alia*, that "[a] lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Model Rules of Prof'l Conduct R. 1.3 cmt. 1 (2010).

[7] Plaintiff's speculation that *ACI* would call Noelien to testify at trial, resulting in no need for Attorney Rohn to cross-examine him, is further reason for concern because Plaintiff's counsel is pre-determining her trial strategy concerning Noelien in a manner that will not run afoul of her ethical obligations.  In *United States v. Massino*, 303 F. Supp. 2d 258 (E.D.N.Y. 2003), the court admonished that if counsel "'is prevented from pursuing a strategy or tactic because of the canons of ethics,'" counsel "'is hardly an objective judge of whether that strategy is sound trial practice. Counsel's inability to make such a conflict-free decision is itself a lapse in representation.'"  *Id.* at 262-63 (citation omitted).

18

course of action does not, therefore, aid Plaintiff's effort in avoiding disqualification of his counsel.

In a final attempt to separate Plaintiff from any accusations that Noelien made defamatory statements, Plaintiff's counsel explained at oral argument that it was her duty as an officer of the court to inject Hovensa's position into ACI's motion for summary judgment so the Court would be aware of the outstanding question of fact on the defamation claim. Counsel reasoned that, if she did not draw the Court's attention to Hovensa's position, the Court would be presented with Plaintiff and ACI both agreeing that Noelien did not make the defamatory statement, and the Court would grant ACI summary judgment on the defamation claim. Then Plaintiff would go to trial against Hovensa, and Hovensa would assert that Noelien *did* make the statement implicating Plaintiffs in the theft and that Hovensa's actions were based on that statement. If the jury believed Hovensa, then Plaintiff would have no opportunity to recover against either ACI or Hovensa on the defamation claim. So as not to leave her client in an "untenable position," counsel underscored that the only way to avoid the possibility of such an unfair outcome would be to interpose, at the summary judgment stage, the existence of a question of material fact between Hovensa on the one hand, and ACI and Plaintiff on the other.

The same diligent representation that underlies counsel's concern about protecting her client's interests regardless of whether Noelien or Galindo may be found to have uttered defamatory statements is the same diligent representation that undergirds the basis for Attorney Rohn's disqualification. Having interposed an accusation against Noelien—for whatever reason—Attorney Rohn cannot now both represent her current clients diligently and avoid a conflict with her former client. Nor can she navigate around this problem by attempting to distance her clients from the accusation on the one hand, while simultaneously embracing the

advantages of the accusation on the other.  Plaintiff's argument to the contrary is, therefore, unavailing.

For all of the foregoing reasons, the Court concludes that the interests of Attorney Rohn's current and former clients are materially adverse, and the resulting conflict created by Attorney Rohn's representation of Plaintiffs violates MRPC 1.9. The Magistrate Judge's finding in that regard is not clearly erroneous.

### 2.  Whether Disqualification of Plaintiff's Chosen Counsel Is Unjust

In asserting that disqualification of his counsel is unjust, Plaintiff maintains that disqualification unfairly turned his effort to oppose summary judgment against him.  He also claims that to deprive him of his chosen counsel and require him to find new counsel at this late stage of the litigation would be unfair. These last two points implicate two factors of the balancing test that courts use to determine if disqualification is appropriate: the current client's interest in retaining his chosen counsel and the risk of prejudice to that client.  *See Corn Derivatives*, 748 F.2d at 162.[8]  Plaintiff's invocation of two of the test's factors on appeal, in claiming that the Magistrate Judge's decision was "unjust," prompts the Court to assess all of the balancing factors.

As to the first factor—the former client's interest in attorney loyalty—Noelien has an abiding interest in Attorney Rohn's loyalty. He stated in his affidavit that he imparted confidential communications to her during the course of his criminal case—communications which necessarily bear upon the events of the current case—and that he never waived those confidential privileges.  (Dkt. No. 280-3, ¶ 3).  He also averred that he did not "consent to being

---

[8] Plaintiffs did not raise this argument before the Magistrate Judge.  While the Court does not condone the practice of presenting arguments on appeal that were not raised before the Magistrate Judge, the Court will address the argument here.

identified by [his] former attorney as a person responsible for any of the claims of the Illarazas," nor did he consent to being examined by her regarding "any of the facts or circumstances involving [his] case." (Dkt. No. 280-3, ¶ 7). He concluded by stating that he did not "consent to her or her firm's continued representation of the Illarazas in their cases." (Dkt. No. 280-3, ¶ 8). Noelien could not be more clear that he did not want his confidences revealed; that he did not want to be put in the untenable position of being forced to reveal them by his former attorney; and that he did not want his former counsel representing the Illarazas where their interests were adverse to his.

An attorney's duty of loyalty to a client, even after the representation may have ended, plays a crucial role in the functioning of our legal system. "Without such a rule, clients may be reluctant to confide completely in their attorneys." *Corn Derivatives*, 748 F.2d at 162. Attorney loyalty, which Model Rule 1.9 protects, is among the "core values that are deeply engrained in our adversary system of justice." *David Cutler Indus., Ltd. v. Direct Group, Inc. (In re David Cutler Indus., Ltd.),* 432 B.R. 529, 541 (Bankr. E.D. Pa. 2010). Noelien properly has an expectation of such loyalty from his former counsel, who in turn has an ethical obligation to sustain it. This factor weighs in favor of disqualification.

The second factor—Plaintiff's interest in retaining his chosen counsel—generally weighs in favor of the party who wishes to retain the counsel of his choice, although that right "is not absolute." *Miller*, 624 F.2d at 1203. Plaintiff claims that because counsel has represented him since 2008 and has invested resources in the case, it would be unjust to take the case away from counsel and to deprive Plaintiff of his chosen counsel. In that regard, he submitted an affidavit in which he stated that his preference was for Attorney Rohn and her law firm to continue to represent him. (Dkt. No. 320-2). This factor weighs against disqualification.

In terms of the third factor—prejudice to Plaintiff—discovery in this case is complete and oral argument on the summary judgment motions is pending.  On September 28, 2011, attorney Eszart A. Wynter, Sr. filed an appearance on behalf of Plaintiff.[9]  Attorney Wynter has represented Jose Illaraza since the commencement of that case in November 2007, a case which Plaintiffs have previously argued is based on "the same exact set of facts" and contains many of the same causes of action as the case brought by his brother, Luis Illaraza.  (Dkt. No. 20).  Plaintiff has not experienced "extraordinary difficulty in finding replacement counsel," nor will Plaintiff have to "incur inordinate expense" in preparing new counsel because Attorney Wynter is intimately familiar with the facts and issues of the case.  *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals*, 2011 WL 6088625, at *7 (E.D. Pa. Dec. 7, 2011).  Plaintiff will not suffer the kind of prejudice that would counsel against disqualification of Attorney Rohn.  Accordingly, this factor weighs in favor of disqualification.

Moreover, contrary to Plaintiff's contention, disqualification in this case does not impact the policy that attorneys should be free to practice without excessive restrictions.  *See  Miller*, 624 F.2d at 1201 (urging courts to "consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions."). While Plaintiff argued, conclusorily, that disqualification would limit his counsel's ability to practice, he did not explain how, and it is not self-evident.  (Dkt. No. 320 at 9).  Indeed, in view of the important role played by MRPC 1.9 in "the maintenance of public confidence in the integrity of the bar," *Corn Derivatives*, 748 F.2d at 162, the Court is at a loss to understand how Attorney Rohn's

---

[9]Although the entry of appearance occurred months after the Magistrate Judge entered his disqualification order, Attorney Wynter's representation of Luis Illaraza is a public record of which this court may take judicial notice pursuant to Fed. R. Evid. 201.  *See, e.g., Jones v. Pa. Attorney Gen*., 2010 WL 2696767, at *1, n.1 (M.D. Pa. July 6, 2010).

disqualification from this particular case on that basis could be deemed to constitute an excessive restriction on her ability to practice law.

Finally, the Court has an abiding interest in protecting the integrity of its proceedings and maintaining public confidence in the judicial system.  "When a court finds a violation of Rule 1.9(a), . . . the public interest that may render disqualification appropriate may be at its zenith." *In re David Cutler Indus.,* 432 B.R. at 541.  Rule 1.9(a) is "designed to eliminate conflicts of interest, enforce a lawyer's duty of loyalty to his client and protect confidential communications. . . .  Indeed, it is difficult to envision many cases in which a court would find a violation of Rule . . . 1.9(a), yet also conclude that disqualification is not appropriate."  *Id.* This factor, therefore, weighs in favor of disqualification.

In sum, although Plaintiff has expressed an interest in retaining his chosen counsel, the other balancing factors weigh overwhelmingly in favor of disqualification.  The Court therefore rejects Plaintiff's contention that disqualification of his counsel is unjust.

### 3.  Whether the Magistrate Judge's Conclusion that ACI Did Not Waive Its Right to Move for Disqualification Is Clearly Erroneous or Contrary to Law

Plaintiff argues on appeal that ACI waived its right to move for disqualification because it had known since 2006 that

> Noelien played a key role in this case, but did not file its motion to disqualify until March of 2011—almost five years.  Further, ACI has known since no later than October 2008 that HOVENSA intended to claim in the litigation that they were relying upon Noelien's alleged statement for their actions against Plaintiffs.

(Dkt. No. 320 at 14-15).[10]  Plaintiff further notes that this litigation has involved twenty-five depositions, mediation, and summary judgment briefings.  He charges that "ACI laid in wait

---

[10] In his filing before the Magistrate Judge, Plaintiff never explicitly argued waiver; he argued only that ACI unnecessarily delayed in bringing its motion, which suggested that ACI was seeking a litigation advantage. (Dkt. No. 300 at 9-10). Furthermore, the Magistrate Judge did not

until almost the end of this case to move for disqualification."  (Dkt. No. 320 at 15).  Plaintiff

concludes that ACI therefore waived its right to move for disqualification, and cites cases where

courts have ruled that delays in so moving, ranging from thirteen months to two and one-half

years, constitute waiver.  (Dkt. No. 320 at 15-16).

"Waiver is a valid basis for the denial of a motion to disqualify."  *Com. Ins. Co. v.*

*Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1208 (E.D. Pa. 1992):

> In determining whether the moving party has waived its right to object to the
> opposing party's counsel the court should consider the length of the delay in
> bringing a motion to disqualify, when the movant learned of the conflict, whether
> the movant was represented by counsel during the delay, why the delay occurred,
> and whether disqualification would result in prejudice to the nonmoving party.

*Id.*  "In particular courts should inquire whether the motion was delayed for tactical reasons."  *Id.*

Waiver, as a defense to disqualification, is based on equitable principles. *See Bagdan v. Beck,*

140 F.R.D. 660, 674 (D.N.J. 1991).

The procedural history of this case shows that, while Plaintiff identified Noelien years

ago as a witness in this case, he had not identified him as making any defamatory statements.

That is a salient—and dispositive—difference when considering the waiver issue.  It was not

until February 28, 2011, when he filed his opposition to ACI's motion for summary judgment

(Dkt. Nos. 262, 263) that Luis Illaraza first took the position that he was relying on the alleged

statement by Noelien implicating Plaintiffs in the theft—in this instance to defeat ACI's motion

for summary judgment on the defamation claim.  Less than two weeks after Plaintiff's opposition

was filed, ACI moved to disqualify Attorney Rohn based on the alleged conflict of interest

between her former client, Noelien, and her current clients, Luis and Jose Illaraza.

---

explicitly address that argument, although he implicitly rejected it when he granted the
disqualification motion.  *See, e.g., Tennille v. Quintana*, 2011 WL 767810, at *1 (W.D. Pa. Feb.
28, 2011) (observing that Magistrate Judge implicitly rejected plaintiff's argument when she
recommended granting defendants' motion).

Based on these facts, ACI did not waive its right to move for disqualification. The conflict did not exist at the beginning of the case, when Plaintiffs identified Noelien as a witness, or throughout the period of discovery. Rather, ACI filed its disqualification motion shortly after Plaintiff took a position that was adverse to his counsel's former client. The Court finds that a period of less than two weeks—spanning when ACI first learned of the conflict and when it filed its motion for disqualification—does not constitute a delay, let alone one that warrants waiver. *Cf. Lyon v. Goldstein,* 2006 WL 2846251, at *6 (D.N.J. Oct. 2, 2006) (finding, among other factors, that thirteen month delay in moving for disqualification constituted waiver). Accordingly, the Court concludes that the Magistrate Judge's Order, which implicitly rejected Plaintiffs' waiver argument, was neither clearly erroneous nor contrary to law.

### 4. ACI's Additional Grounds in Support of Its Motion to Disqualify

On January 11, 2012, the day before the date on which the hearing on the disqualification appeal was originally scheduled, ACI filed a "Notice of Additional Grounds in Support of Anthony Crane's Motion to Disqualify Plaintiff's Counsel" to address a matter that had recently arisen. (Dkt. No. 373). In that filing, ACI asserted that a former associate of Ogletree, Deakins, Nash, Smoak & Stewart, LLC ("Ogletree"), the law firm representing ACI, had resigned and had begun working for Attorney Rohn's firm in November or December 2011. Ogletree further claimed that the former associate "was intimately involved" in the Illaraza case; that he could not represent Plaintiff in this matter pursuant to MRPC 1.9; and that the prohibition of representation extended to the former associate's new firm pursuant to MRPC 1.10. (Dkt. No. 373 at 2).[11] Plaintiff filed a brief response. (Dkt. No. 374). The Court then re-scheduled the hearing on the

---

[11] Model Rule 1.10, entitled "Imputation Of Conflicts of Interest: General Rule," provides, in pertinent part: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9[.]" Model Rule of Prof'l Conduct R. 1.10(a) (2010).

disqualification appeal for February 1, 2012, in order to permit further briefing on the issue of disqualification pursuant to MRPC 1.10.  (Dkt. No. 376).

At oral argument, counsel vigorously debated this additional ground for disqualification, raising several factual issues that would have required an additional hearing for resolution. However, in view of the Court's affirmance of the Magistrate Judge's Order disqualifying Plaintiff's counsel, the Court need not reach this additional argument nor refer it back to the Magistrate Judge for further proceedings.

## III.  CONCLUSION

The Court concludes that the Magistrate Judge did not clearly err when he found that: (1) Plaintiff's interests were materially adverse to Noelien's interests; (2) a conflict of interest existed pursuant to MRPC 1.9; and (3) the appropriate remedy was to disqualify Attorney Rohn and her firm from representation of the Plaintiffs in this matter.  In addition, the Magistrate Judge's disqualification order was not unjust.  Finally, the Magistrate Judge's implicit ruling that ACI did not waive its right to move for disqualification was neither clearly erroneous nor contrary to law.  Accordingly, the Court denies Plaintiffs' Appeal and Objection and affirms the Magistrate Judge's May 4, 2011 Order Granting Motion to Disqualify.  (Dkt. No. 314). An appropriate Order accompanies this Memorandum Opinion.

Date: March 31, 2012                                   _____/s/_____
                                                       WILMA A. LEWIS
                                                       District Judge